**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| CIMCO REFRIGERATION INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: _____ |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| AMERICAN REFRIGERATION, LLC, | ) | |
| TRAVIS MCGANNON, RICHARD ROTH, | ) | |
| JEREMY SCIASCIA, and JAMES | ) | |
| SULLIVAN, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff CIMCO Refrigeration Inc. sues Defendants American Refrigeration, LLC, Travis McGannon, Richard Roth, Jeremy Sciascia, and James Sullivan, (collectively, "Defendants") and states the following:

**INTRODUCTION**

1. Plaintiff CIMCO Refrigeration Inc., a leading provider of commercial and industrial refrigeration services, brings this action to redress a coordinated scheme by its former employees and a direct competitor to exploit CIMCO's confidential information, trade secrets, customer relationships, and workforce for their own collective benefit. While employed by CIMCO, Defendants Travis McGannon, Richard "Rick" Roth, Jeremy Sciascia, and James Sullivan (collectively, "Individual Defendants") were entrusted with access to CIMCO's proprietary business information, including customer data, pricing strategies, service histories, and other confidential information and trade secret materials. In exchange for this access, they entered into written agreements containing enforceable confidentiality and non-solicitation obligations designed to protect CIMCO's business interests. Rather than honor those obligations, the

1

Individual Defendants secretly aligned themselves with Defendant American Refrigeration, LLC, a direct competitor of CIMCO, and engaged in a deliberate plan to divert CIMCO's customers, recruit its employees, and appropriate its confidential information. While still employed by CIMCO and owing it fiduciary duties of loyalty and good faith, the Individual Defendants used CIMCO's proprietary information and relationships to solicit CIMCO's customers and workforce for the benefit of themselves and American Refrigeration.

2.      American Refrigeration knowingly participated in and encouraged this misconduct. With knowledge of the contractual and fiduciary obligations that the Individual Defendants owed to CIMCO, American Refrigeration aided and abetted their breaches, intentionally interfered with CIMCO's customer and employee relationships, and used the misappropriated confidential and proprietary information to compete unfairly against CIMCO. As a direct and proximate result of Defendants' wrongful conduct, CIMCO has suffered significant damages, including the loss of customers, business opportunities, and valuable employees, as well as the misappropriation of its confidential and proprietary information. Defendants' conduct constitutes, among other things, breach of contract, breach of fiduciary duty, aiding and abetting such breaches, tortious interference with contractual and business relationships, trade secret misappropriation, and civil conspiracy. CIMCO therefore brings this action to recover damages caused by Defendants' misconduct and to obtain injunctive relief preventing further misuse of CIMCO's confidential and proprietary information, solicitation of its customers and employees, and other unfair competitive practices.

**PARTIES**

3.      Plaintiff CIMCO Refrigeration Inc. ("CIMCO" or "Plaintiff") is an Alabama corporation with its principal place of business in Mobile, Alabama. CIMCO specializes in the engineering, design, manufacture, installation and service of industrial, process cooling, and

recreational refrigeration systems. CIMCO is one of the largest industrial refrigeration contractors in North America and serves customers nationwide.

4.      Defendant American Refrigeration, LLC ("American Refrigeration") is a limited liability company formed under the laws of Florida and does business nationwide, including in Alabama. American Refrigeration maintains a registered agent for service of process in Alabama at 641 South Lawrence Street, Montgomery, Alabama 36104.

5.      Defendant Travis McGannon ("McGannon") is an individual who resides at 12350 Watkins Road, Hudson, Colorado 80642. Upon information and belief, McGannon is a citizen of Colorado. McGannon worked for CIMCO from February 2, 2015, until September 5, 2025. McGannon agreed that his employment relationship with CIMCO "shall be governed in all respects, whether as to the validity, construction, capacity, performance or otherwise, by the laws of the State of Alabama." Ex. 1, McGannon Service Sales Agreement, at 3. McGannon and CIMCO further agreed that any action or suit arising out of or relating to his employment agreement "shall be brought in the appropriate court located [in] Mobile County, Alabama." *Id.*

6.      Defendant Richard "Rick" Roth ("Roth") is an individual who resides at 5115 Fowler Avenue, Everett, Washington 98203. Upon information and belief, Roth is a citizen of Washington. Roth worked for CIMCO from July 11, 2019, until September 5, 2025. Roth agreed that his employment relationship with CIMCO "shall be governed in all respects, whether as to the validity, construction, capacity, performance or otherwise, by the laws of the State of Alabama." Ex. 2, Roth Product Support Agreement, at 3. Roth and CIMCO further agreed that any action or suit arising out of or relating to his employment agreement "shall be brought in the appropriate court located [in] Mobile County, Alabama." *Id.*

7.      Defendant Jeremy Sciascia ("Sciascia") is an individual who resides at 21379 E.

3

Camina Plata, Queen Creek, Arizona 85142. Upon information and belief, Sciascia is a citizen of Arizona. Sciascia worked for CIMCO from April 15, 2013, until August 1, 2025. Sciascia agreed that his employment relationship with CIMCO "shall be governed in all respects, whether as to the validity, construction, capacity, performance or otherwise, by the laws of the State of Alabama." Ex. 3, Sciascia Sales Manager Agreement, at 3; Ex. 4, Sciascia Account Manager Agreement, at 3. Sciascia and CIMCO further agreed that any action or suit arising out of or relating to his employment agreement "shall be brought in the appropriate court located [in] Mobile County, Alabama." Ex. 3 at 3; Ex. 4 at 3.

8.     Defendant James Sullivan ("Sullivan") is an individual who resides at 41075 N. Olive St., Queen Creek, Arizona 85140. Upon information and belief, Sullivan is a citizen of Arizona. Sullivan worked for CIMCO from June 28, 2021, until September 5, 2025. Sullivan agreed that his employment relationship with CIMCO "shall be governed in all respects, whether as to the validity, construction, capacity, performance or otherwise, by the laws of the State of Alabama." Ex. 5, Sullivan Field Service Technician Agreement, at 3. Sullivan and CIMCO further agreed that any action or suit arising out of or relating to his employment agreement "shall be brought in the appropriate court located [in] Mobile County, Alabama." *Id.*

## JURISDICTION

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under federal law (18 U.S.C. § 1836 *et seq.*). This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for CIMCO's state law causes of action. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

10.     This Court has personal jurisdiction over American Refrigeration because it

regularly transacts business in Alabama, maintains a registered agent for service of process in Alabama, and is registered with the Alabama Secretary of State to conduct business in Alabama, thereby purposefully availing itself of the privilege of acting in the State of Alabama. Additionally, this Court has personal jurisdiction over American Refrigeration because it committed the tortious acts identified herein and caused damage to CIMCO in Alabama.

11.     This Court has personal jurisdiction over McGannon, Roth, Sciascia, and Sullivan because they consented to jurisdiction in Mobile County, Alabama. *See* Ex. 1 at 3; Ex. 2 at 3; Ex. 3 at 3; Ex. 4 at 3; Ex. 5 at 3. This Court also has personal jurisdiction over McGannon, Roth, Sciascia, and Sullivan because they purposefully directed their activities to Alabama by taking overt actions in furtherance with their contracts with CIMCO, an Alabama resident, and benefited from Alabama's laws in connection with their contracts with CIMCO. While employed by CIMCO, McGannon, Roth, Sciascia, and Sullivan accessed and used CIMCO's confidential information and trade secrets (which was developed and maintained in Alabama, either on servers housed in Alabama or in hard copy documents located in Alabama) to assist them in developing business and performing other employment duties as required by their contracts. Additionally, this Court has personal jurisdiction over McGannon, Roth, Sciascia, and Sullivan because they committed the tortious acts identified herein and caused damage to CIMCO in Alabama.

### VENUE

12.     Venue is proper in the Southern District of Alabama under 28 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction in this District. Venue is also proper in this District because Defendants have caused damage to CIMCO in this District and thus a substantial part of the events giving rise to this action occurred in this District.

**FACTS**

**I.    CIMCO's business and investment in customer relationships.**

13.    CIMCO is a refrigeration company that provides commercial and industrial refrigeration installation, inspection, maintenance, testing and repair services as well as labor and parts to customers throughout the United States. Through years of investment, CIMCO has developed substantial goodwill, a loyal customer base, and a skilled workforce.

14.    CIMCO has contractor licenses in Alabama, Arizona, California, Colorado, Connecticut, Florida, Georgia, Indiana (Allen County), Kentucky, Louisiana, Michigan, Mississippi, Nebraska, Nevada, North Carolina, Ohio, Oklahoma, Rhode Island, South Carolina, Tennessee, Texas, Utah, and Virginia. Additionally, CIMCO has engineering licenses in the following states: Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and Wyoming.

15.    CIMCO has operated in the refrigeration services industry for many years and has invested substantial time, effort, and financial resources developing its business, reputation, and goodwill.

16.    Through those efforts, CIMCO has developed long-standing relationships with customers who rely on CIMCO to maintain and service critical refrigeration equipment necessary to their daily operations.

17.    CIMCO's business depends heavily on the strength of these customer relationships, the technical expertise of its employees, and the proprietary information CIMCO has developed

regarding customer needs, equipment configurations, and service histories.

18.    CIMCO also devotes significant resources to recruiting, training, and retaining skilled refrigeration technicians, account managers, and sales personnel. Those employees often develop close working relationships with customers and become familiar with the customers' equipment, maintenance schedules, service preferences, and pricing arrangements.

## II.    CIMCO's Confidential Information and Trade Secrets.

19.    In the course of operating its business, CIMCO develops and maintains valuable confidential and proprietary information that is not publicly known and that provides CIMCO with a competitive advantage in the refrigeration services industry.

20.    This information includes, among other things, customers lists and records, customer information lists, customer identities, customer contact information and key decision makers, customer service histories and maintenance records, equipment specifications, maintenance schedules and service requirements for specific systems, contract terms and renewal schedules, customer preferences, customer budgets and purchasing patterns, employee information, pricing information, quotes, profits, costs, sources, sketches, drawings, pricing data, sales kits, machine specification data, performance handbooks, calculations, internal material prepared for or obtained for CIMCO, and other internal business data (collectively, "Confidential Information").

21.    CIMCO also maintains trade secrets, including information regarding customer service needs; detailed information regarding refrigeration equipment installed at customer locations; pricing structures; technician assignments and service routes; equipment configurations; bidding strategies; marketing plans and strategies; as well as internal business and operational strategies that are not publicly known and that derive independent economic value from their

7

secrecy (collectively, "Trade Secrets").

22.    CIMCO has invested significant time, effort, and expense developing its Confidential Information and Trade Secrets.

23.    Much of this information constitutes confidential business information and trade secrets because it is not generally known in the industry, derives independent economic value from its secrecy, and would provide a significant competitive advantage to anyone who obtained it improperly.

24.    For example, detailed knowledge of a customer's refrigeration equipment, service history, pricing structure, and contract renewal timeline would allow a competitor to target that customer with precisely timed and strategically priced proposals.

25.    CIMCO's Confidential Information and Trade Secrets are housed on servers located in Alabama as well as in hard copy documents, which are also located in Alabama.

26.    CIMCO takes reasonable measures to protect the secrecy and confidentiality of its Confidential Information and Trade Secrets, including restricting access to employees with a legitimate business need, maintaining electronic security protections, and requiring employees to execute written agreements containing confidentiality and non-solicitation provisions.

### III.    Sciascia's employment with CIMCO.

27.    Sciascia worked for CIMCO from April 15, 2013, until he was terminated on August 1, 2025.

#### A.    Sciascia's Account Manager Agreement.

28.    In December 2018, while already working as an employee of CIMCO, Sciascia entered an agreement with CIMCO for employment in a position within CIMCO's Service Sales Department: Account Manager – Service Sales ("Account Manager Agreement"). A true and

8

correct copy of Sciascia's Account Manager Agreement is attached as **Exhibit 4**.

29.    Sciascia's role as Account Manager within CIMCO's Sales Service Department commenced on January 1, 2019. Ex. 4 at 1.

30.    Sciascia's Account Manager Agreement was signed by CIMCO's representative, Waylon Walker, on December 28, 2018. Ex. 4 at 3.

31.    Sciascia signed his Account Manager Agreement on December 31, 2018. *Id.*

32.    Based on their conduct, Sciascia and CIMCO agreed to conduct the transaction by electronic means.

33.    An employee-employer relationship existed between Sciascia and CIMCO at the time Sciascia's Account Manager Agreement was executed.

34.    In his Account Manager Agreement, Sciascia agreed to the following confidentiality provision:

Confidentiality & Privacy

Our Company Policy has standard disclosure and confidentiality requirements as outlined below. Acknowledgment of these standards prior to your acceptance of the position and adherence to them during your employment comprises part of your employment agreement with the Company.

During the course of your employment, you will acquire knowledge and information about the Company that may be deemed confidential in nature. It is agreed that you shall keep such information in strictest confidence and will not disclose at any time, either subsequent to or during your employment with the Company, any fact, knowledge, information or data of the Company of a secret or confidential nature, (including confidential information as described below), that may be obtained by you in the course of your employment with the Company and relating to any process, machine, manufacture, composition of matter, invention, computer software development/enhancements or discovery, except as any Officer of the Company may otherwise consent in writing. All information relating to the products or business of the Company shall not be disclosed to any unauthorized third party without the prior written consent of the Company during the term of your employment or at any time thereafter.

. . .

9

The term "confidential information" includes, but is not limited to, information emanating from the Company, its associations, affiliates, agents, suppliers, or customers, or conceived or developed by you in the course of your employment regarding marketing plans and strategies, customers lists and records, profits, costs, pricing and sources. As a condition of employment, you will be required to familiarize yourself with the Company's Code of Conduct and indicate your acceptance of the terms by signing and returning the acknowledgement page prior to joining the Company and annually or as required by the Company thereafter.

Upon termination of your employment with the Company you will return promptly to the Company all sketches, drawings, customer information lists, pricing data, sales kits, machine specification data, performance handbooks, calculations, and any other material prepared for or obtained for the Company at any time and retained by you during the course of your employment with the Company and return to the Company all copies of the same. In addition, you are prohibited from using any such confidential or proprietary information to your own advantage or to the business advantage of your future employer\company, if any.

Ex. 4 at 1–2.

35.    Sciascia further agreed to the following non-solicitation provision in his Account

Manager Agreement:

Non-Solicitation:

While employed with CIMCO Refrigeration, and for a period of one (1) year following the cessation of your employment, you agree that you will not, either directly or indirectly, either on your own behalf or on that of another business, and whether as an employee, consultant, advisor or otherwise, engage in or assist in the following activities:

(a) soliciting, recruiting or attempting to recruit or hire any employee of CIMCO Refrigeration or its affiliates, or otherwise induce such employee to leave the employment of CIMCO Refrigeration or its affiliates;

(b) soliciting the trade or patronage of any clients, contacts, or customers of CIMCO Refrigeration, through individuals with whom you have had direct contact during the last twelve (12) months of employment with CIMCO Refrigeration, with respect to any products, services, trade secrets or other matters in which CIMCO Refrigeration is active;

(c) soliciting, approaching, servicing or dealing with any clients, contacts or customers of CIMCO Refrigeration, in an attempt to convince such person or entity to terminate any business relationship between such person or entity with CIMCO Refrigeration;

(d) Explicitly stating to any prospective client or customer of CIMCO Refrigeration that if should refrain from entering in a business relationship with CIMCO Refrigeration.

Ex. 4 at 2–3.

**B.      Sciascia's Sales Manager Agreement.**

36.     On June 18, 2020, while already working as an employee of CIMCO in the Account Manager – Service Sales position, Sciascia entered an agreement with CIMCO for employment in a new position: Sales Manager – South West Region ("Sales Manager Agreement"). A true and correct copy of Sciascia's Sales Manager Agreement is attached as **Exhibit 3**.

37.     Sciascia's role as Sales Manager commenced on July 1, 2020. Ex. 3 at 1.

38.     Sciascia's Sales Manager Agreement was signed by CIMCO's representative, Dave Malinauskas, on June 18, 2020. Ex. 3 at 3.

39.     An electronic copy of Sciascia's Sales Manager Agreement, after it had been signed by CIMCO's representative, was sent to Sciascia electronically by email.

40.     After receiving the electronic copy of the Sales Manager Agreement that had been signed by CIMCO's representative on June 18, 2020, Sciascia signed it the same day. Ex. 3 at 3.

41.     Sciascia then emailed the fully executed Sales Manager Agreement back to CIMCO.

42.     Based on their conduct, Sciascia and CIMCO agreed to conduct the transaction by electronic means.

43.     An employee-employer relationship existed between Sciascia and CIMCO at the time Sciascia's Sales Manager Agreement was executed.

44.     In his Sales Manager Agreement, Sciascia agreed to the following confidentiality provision:

<u>Confidentiality & Privacy</u>

Our Company Policy has standard disclosure and confidentiality requirements as outlined below. Acknowledgment of these standards prior to your acceptance of the position and adherence to them during your employment comprises part of your employment agreement with the Company.

During the course of your employment, you will acquire knowledge and information about the Company that may be deemed confidential in nature. It is agreed that you shall keep such information in strictest confidence and will not disclose at any time, either subsequent to or during your employment with the Company, any fact, knowledge, information or data of the Company of a secret or confidential nature, (including confidential information as described below), that may be obtained by you in the course of your employment with the Company and relating to any process, machine, manufacture, composition of matter, invention, computer software development/enhancements or discovery, except as any Officer of the Company may otherwise consent in writing. All information relating to the products or business of the Company shall not be disclosed to any unauthorized third party without the prior written consent of the Company during the term of your employment or at any time thereafter.

. . .

The term "confidential information" includes, but is not limited to, information emanating from the Company, its associations, affiliates, agents, suppliers, or customers, or conceived or developed by you in the course of your employment regarding marketing plans and strategies, customers lists and records, profits, costs, pricing and sources. As a condition of employment, you will be required to familiarize yourself with the Company's Code of Conduct and indicate your acceptance of the terms by signing and returning the acknowledgement page prior to joining the Company and annually or as required by the Company thereafter.

Upon termination of your employment with the Company you will return promptly to the Company all sketches, drawings, customer information lists, pricing data, sales kits, machine specification data, performance handbooks, calculations, and any other material prepared for or obtained for the Company at any time and retained by you during the course of your employment with the Company and return to the Company all copies of the same. In addition, you are prohibited from using any such confidential or proprietary information to your own advantage or to the business advantage of your future employer\company, if any.

Ex. 3 at 2.

45.　　Sciascia further agreed to the following non-solicitation provision in his Sales

Manager Agreement:

Non-Solicitation:

While employed with CIMCO Refrigeration, and for a period of one (1) year following the cessation of your employment, you agree that you will not, either directly or indirectly, either on your own behalf or on that of another business, and whether as an employee, consultant, advisor or otherwise, engage in or assist in the following activities:

(a) soliciting, recruiting or attempting to recruit or hire any employee of CIMCO Refrigeration or its affiliates, or otherwise induce such employee to leave the employment of CIMCO Refrigeration or its affiliates;

(b) soliciting the trade or patronage of any clients, contacts, or customers of CIMCO Refrigeration, through individuals with whom you have had direct contact during the last twelve (12) months of employment with CIMCO Refrigeration, with respect to any products, services, trade secrets or other matters in which CIMCO Refrigeration is active;

(c) soliciting, approaching, servicing or dealing with any clients, contacts or customers of CIMCO Refrigeration, in an attempt to convince such person or entity to terminate any business relationship between such person or entity with CIMCO Refrigeration;

(d) explicitly stating to any prospective client or customer of CIMCO Refrigeration that if should refrain from entering in a business relationship with CIMCO Refrigeration.

Ex. 3 at 2–3.

## IV.     McGannon's employment with CIMCO.

46.     McGannon worked for CIMCO from February 2, 2015, until September 5, 2025.

47.     In March 2020, while already working as an employee of CIMCO, McGannon entered an agreement with CIMCO for employment in a position within CIMCO's Service Sales Department: Account Manager – Colorado – Service Sales ("Service Sales Agreement"). A true and correct copy of McGannon's Service Sales Agreement is attached as **Exhibit 1**.

48.     McGannon's role as Account Manager within CIMCO's Sales Service Department commenced on April 1, 2020. Ex. 1 at 1.

49.     Waylon Walker, acting as CIMCO's representative, signed McGannon's Service

Sales Agreement on behalf of CIMCO on March 24, 2020. Ex. 1 at 3.

50.     McGannon signed his Service Sales Agreement on March 25, 2020. *Id.*

51.     Based on their conduct, McGannon and CIMCO agreed to conduct the transaction by electronic means.

52.     An employee-employer relationship existed between McGannon and CIMCO at the time McGannon's Service Sales Agreement was executed.

53.     In his Service Sales Agreement, McGannon agreed to the following confidentiality provision:

Confidentiality & Privacy

Our Company Policy has standard disclosure and confidentiality requirements as outlined below. Acknowledgment of these standards prior to your acceptance of the position and adherence to them during your employment comprises part of your employment agreement with the Company.

During the course of your employment, you will acquire knowledge and information about the Company that may be deemed confidential in nature. It is agreed that you shall keep such information in strictest confidence and will not disclose at any time, either subsequent to or during your employment with the Company, any fact, knowledge, information or data of the Company of a secret or confidential nature, (including confidential information as described below), that may be obtained by you in the course of your employment with the Company and relating to any process, machine, manufacture, composition of matter, invention, computer software development/enhancements or discovery, except as any Officer of the Company may otherwise consent in writing. All information relating to the products or business of the Company shall not be disclosed to any unauthorized third party without the prior written consent of the Company during the term of your employment or at any time thereafter.

. . .

The term "confidential information" includes, but is not limited to, information emanating from the Company, its associations, affiliates, agents, suppliers, or customers, or conceived or developed by you in the course of your employment regarding marketing plans and strategies, customers lists and records, profits, costs, pricing and sources. As a condition of employment, you will be required to familiarize yourself with the Company's Code of Conduct and indicate your acceptance of the terms by signing and returning the acknowledgement page prior to joining the Company and annually or as required by the Company thereafter.

> Upon termination of your employment with the Company you will return promptly to the Company all sketches, drawings, customer information lists, pricing data, sales kits, machine specification data, performance handbooks, calculations, and any other material prepared for or obtained for the Company at any time and retained by you during the course of your employment with the Company and return to the Company all copies of the same. In addition, you are prohibited from using any such confidential or proprietary information to your own advantage or to the business advantage of your future employer\company, if any.

Ex. 1 at 2.

54.    McGannon further agreed to the following non-solicitation provision in his Service Sales Agreement:

> Non-Solicitation:
>
> While employed with CIMCO Refrigeration, and for a period of one (1) year following the cessation of your employment, you agree that you will not, either directly or indirectly, either on your own behalf or on that of another business, and whether as an employee, consultant, advisor or otherwise, engage in or assist in the following activities:
>
> (a) soliciting, recruiting or attempting to recruit or hire any employee of CIMCO Refrigeration or its affiliates, or otherwise induce such employee to leave the employment of CIMCO Refrigeration or its affiliates;
>
> (b) soliciting the trade or patronage of any clients, contacts, or customers of CIMCO Refrigeration, through individuals with whom you have had direct contact during the last twelve (12) months of employment with CIMCO Refrigeration, with respect to any products, services, trade secrets or other matters in which CIMCO Refrigeration is active;
>
> (c) soliciting, approaching, servicing or dealing with any clients, contacts or customers of CIMCO Refrigeration, in an attempt to convince such person or entity to terminate any business relationship between such person or entity with CIMCO Refrigeration;
>
> (d) Explicitly stating to any prospective client or customer of CIMCO Refrigeration that if should refrain from entering in a business relationship with CIMCO Refrigeration.

Ex. 1 at 2–3.

## V.    Roth's employment with CIMCO.

55.    Roth worked for CIMCO from July 11, 2019, until September 5, 2025.

56.     In December 2024, while already working as an employee of CIMCO, Roth entered an agreement with CIMCO for employment in a position within the Sales Department of CIMCO: Account Manager – Product Support ("Product Support Agreement"). A true and correct copy of Roth's Product Support Agreement is attached as **Exhibit 2**.

57.     Roth's role as Account Manager – Product Support within CIMCO's Sales Department commenced on January 6, 2025. Ex. 2 at 1.

58.     Sciascia, acting as CIMCO's representative, signed Roth's Product Support Agreement on behalf of CIMCO on December 20, 2024. Ex. 2 at 3.

59.     Roth signed his Product Support Agreement on December 27, 2024. *Id.*

60.     Based on their conduct, Roth and CIMCO agreed to conduct the transaction by electronic means.

61.     An employee-employer relationship existed between Roth and CIMCO at the time Roth's Product Support Agreement was executed.

62.     In his Product Support Agreement, Roth agreed to the following confidentiality provision:

Confidentiality & Privacy

Our Company Policy has standard disclosure and confidentiality requirements as outlined below. Acknowledgment of these standards prior to your acceptance of the position and adherence to them during your employment comprises part of your employment agreement with the Company.

During the course of your employment, you will acquire knowledge and information about the Company that may be deemed confidential in nature. It is agreed that you shall keep such information in strictest confidence and will not disclose at any time, either subsequent to or during your employment with the Company, any fact, knowledge, information or data of the Company of a secret or confidential nature, (including confidential information as described below), that may be obtained by you in the course of your employment with the Company and relating to any process, machine, manufacture, composition of matter, invention, computer software development/enhancements or discovery, except as any Officer of the Company may otherwise consent in writing.

16

All information relating to the products or business of the Company shall not be disclosed to any unauthorized third party without the prior written consent of the Company during the term of your employment or at any time thereafter.

. . .

The term "confidential information" includes, but is not limited to, information emanating from the Company, its associations, affiliates, agents, suppliers, or customers, or conceived or developed by you in the course of your employment regarding marketing plans and strategies, customers lists and records, profits, costs, pricing and sources. As a condition of employment, you will be required to familiarize yourself with the Company's Code of Conduct and indicate your acceptance of the terms by signing and returning the acknowledgement page prior to joining the Company and annually or as required by the Company thereafter.

Upon termination of your employment with the Company you will return promptly to the Company all sketches, drawings, customer information lists, pricing data, sales kits, machine specification data, performance handbooks, calculations, and any other material prepared for or obtained for the Company at any time and retained by you during the course of your employment with the Company and return to the Company all copies of the same. In addition, you are prohibited from using any such confidential or proprietary information to your own advantage or to the business advantage of your future employer\company, if any.

Ex. 2 at 2–3.

63.    Roth further agreed to the following non-solicitation provision in his Product Support Agreement:

Non-Solicitation:

While employed with CIMCO Refrigeration, and for a period of one (1) year following the cessation of your employment, you agree that you will not, either directly or indirectly, either on your own behalf or on that of another business, and whether as an employee, consultant, advisor or otherwise, engage in or assist in the following activities:

(a) soliciting, recruiting or attempting to recruit or hire any employee of CIMCO Refrigeration or its affiliates, or otherwise induce such employee to leave the employment of CIMCO Refrigeration or its affiliates;

(b) soliciting the trade or patronage of any clients, contacts, or customers of CIMCO Refrigeration, through individuals with whom you have had direct contact during the last twelve (12) months of employment with CIMCO Refrigeration, with respect to any products, services, trade secrets or other matters in which CIMCO Refrigeration is active;

17

(c) soliciting, approaching, servicing or dealing with any clients, contacts or customers of CIMCO Refrigeration, in an attempt to convince such person or entity to terminate any business relationship between such person or entity with CIMCO Refrigeration;

(d) explicitly stating to any prospective client or customer of CIMCO Refrigeration that if should refrain from entering in a business relationship with CIMCO Refrigeration.

Ex. 2 at 3.

## VI.   Sullivan's employment with CIMCO.

64.   Sullivan worked for CIMCO from June 28, 2021, until September 5, 2025.

65.   Sullivan entered an agreement with CIMCO for employment as an Account Manager – Product Support Sales & Field Service Technician – South West Region within the Sales Department of CIMCO ("Field Service Technician Agreement"). A true and correct copy of Sullivan's Field Service Technician Agreement is attached as **Exhibit 5**.

66.   Sciascia, acting as CIMCO's representative, signed Sullivan's Field Service Technician Agreement on behalf of CIMCO. Ex. 5 at 4.

*67.*   Sullivan then signed his Field Service Technician Agreement. *Id.*

68.   Based on their conduct, Sullivan and CIMCO agreed to conduct the transaction by electronic means.

69.   In his Field Service Technician Agreement, Sullivan agreed to the following confidentiality provision:

Confidentiality & Privacy

Our Company Policy has standard disclosure and confidentiality requirements as outlined below. Acknowledgment of these standards prior to your acceptance of the position and adherence to them during your employment comprises part of your employment agreement with the Company.

During the course of your employment, you will acquire knowledge and information about the Company that may be deemed confidential in nature. It is agreed that you shall keep such information in strictest confidence and will not

18

disclose at any time, either subsequent to or during your employment with the Company, any fact, knowledge, information or data of the Company of a secret or confidential nature, (including confidential information as described below), that may be obtained by you in the course of your employment with the Company and relating to any process, machine, manufacture, composition of matter, invention, computer software development/enhancements or discovery, except as any Officer of the Company may otherwise consent in writing.

All information relating to the products or business of the Company shall not be disclosed to any unauthorized third party without the prior written consent of the Company during the term of your employment or at any time thereafter.

. . .

The term "confidential information" includes, but is not limited to, information emanating from the Company, its associations, affiliates, agents, suppliers, or customers, or conceived or developed by you in the course of your employment regarding marketing plans and strategies, customers lists and records, profits, costs, pricing and sources. As a condition of employment, you will be required to familiarize yourself with the Company's Code of Conduct and indicate your acceptance of the terms by signing and returning the acknowledgement page prior to joining the Company and annually or as required by the Company thereafter.

Upon termination of your employment with the Company you will return promptly to the Company all sketches, drawings, customer information lists, pricing data, sales kits, machine specification data, performance handbooks, calculations, and any other material prepared for or obtained for the Company at any time and retained by you during the course of your employment with the Company and return to the Company all copies of the same. In addition, you are prohibited from using any such confidential or proprietary information to your own advantage or to the business advantage of your future employer\company, if any.

Ex. 5 at 2–3.

70.     Sullivan further agreed to the following non-solicitation provision in his Field Service Technician Agreement:

Non-Solicitation:

While employed with CIMCO Refrigeration, and for a period of one (1) year following the cessation of your employment, you agree that you will not, either directly or indirectly, either on your own behalf or on that of another business, and whether as an employee, consultant, advisor or otherwise, engage in or assist in the following activities:

    (a) soliciting, recruiting or attempting to recruit or hire any employee of

19

CIMCO Refrigeration or its affiliates, or otherwise induce such employee to leave the employment of CIMCO Refrigeration or its affiliates;

(b) soliciting the trade or patronage of any clients, contacts, or customers of CIMCO Refrigeration, through individuals with whom you have had direct contact during the last twelve (12) months of employment with CIMCO Refrigeration, with respect to any products, services, trade secrets or other matters in which CIMCO Refrigeration is active;

(c) soliciting, approaching, servicing or dealing with any clients, contacts or customers of CIMCO Refrigeration, in an attempt to convince such person or entity to terminate any business relationship between such person or entity with CIMCO Refrigeration;

(d) Explicitly stating to any prospective client or customer of CIMCO Refrigeration that if should refrain from entering in a business relationship with CIMCO Refrigeration.

Ex. 5 at 3.

## VII. The Individual Defendants' access to CIMCO's Confidential Information and Trade Secrets.

71. The Individual Defendants were employed by CIMCO in positions that involved significant interaction with CIMCO's customers and gave them access to CIMCO's Confidential Information and Trade Secrets.

72. The Individual Defendants were aware of CIMCO's business relationships and contracts with its clients, contacts, customers, and employees as evidenced by (among other things) the fact that the existence of the business relationships and contracts were expressly stated in the Individual Defendants' contracts with CIMCO.

73. The knowledge of the Individual Defendants is attributed to American Refrigeration.

74. During their employment, the Individual Defendants were entrusted with access to CIMCO's internal systems, service records, pricing information, customer contacts, and other sensitive business information.

20

75.     The Individual Defendants also developed relationships with CIMCO's customers while acting as representatives of CIMCO.

76.     CIMCO provided the Individual Defendants with access to its Confidential Information, Trade Secrets, and customer relationships solely for the purpose of performing their duties on behalf of CIMCO.

77.     The Individual Defendants accessed CIMCO's Confidential Information and Trade Secrets via servers located in Alabama.

78.     As a condition of their employment, each of the Individual Defendants executed written agreements containing, among other things, confidentiality obligations and covenants prohibiting the solicitation of CIMCO's customers and employees for a specified period following termination of employment.

79.     Under their agreements, the Individual Defendants agreed not to use or disclose CIMCO's Confidential Information and Trade Secrets, except for the benefit of CIMCO and not to solicit CIMCO's customers or employees after leaving CIMCO's employment.

80.     In addition to their contractual obligations, the Individual Defendants each owed fiduciary duties to CIMCO during their employment, including duties of loyalty, honesty, and good faith.

## VIII.   The Individual Defendants' misconduct while employed by CIMCO.

81.     Despite these obligations and while still employed by CIMCO, the Individual Defendants began collectively organizing and planning to leave CIMCO and join a direct competitor of CIMCO: American Refrigeration.

82.     American Refrigeration is a refrigeration services company that competes directly with CIMCO for customers, projects, and skilled employees in the same geographic markets.

21

83.     While still employed by CIMCO, the Individual Defendants began communicating with American Refrigeration regarding employment opportunities as well as potential plans to move business from CIMCO to American Refrigeration and to recruit employees from CIMCO to join American Refrigeration.

84.     While still employed by CIMCO, the Individual Defendants began communicating with other CIMCO employees about leaving their employment with CIMCO and joining American Refrigeration.

85.     During this time, the Individual Defendants used their positions within CIMCO to gather CIMCO's Confidential Information and Trade Secrets, including customer information, pricing data, and service histories.

86.     The Individual Defendants used their access to CIMCO's systems and records to collect, download, copy, retain, and/or otherwise take possession of CIMCO's Confidential Information and Trade Secrets shortly before leaving their employment with CIMCO.

87.     This conduct included, upon information and belief:

   a.   accessing and copying customer contact lists and service records;

   b.   retaining pricing information and bid data relating to CIMCO's customers;

   c.   downloading or forwarding internal documents and other business information; and

   d.   otherwise retaining knowledge and materials relating to CIMCO's customers and business operations for use after leaving CIMCO.

88.     The Individual Defendants engaged in this conduct without CIMCO's knowledge or authorization and in violation of their contractual and fiduciary obligations.

89.     The Individual Defendants subsequently resigned from CIMCO or were terminated

and, within a relatively short period of time, each of the Individual Defendants accepted positions with American Refrigeration.

90.    At all relevant times, the Individual Defendants acted individually and in concert with one another and with American Refrigeration.

## IX.    The Individual Defendants' departure from CIMCO and immediate competition.

91.    CIMCO terminated Sciascia's employment on August 1, 2025.

92.    McGannon, Roth, and Sullivan each sent email resignations—within one hour of each other—wherein they each resigned from their employment with CIMCO on September 5, 2025.

93.    The Individual Defendants recruited several other CIMCO employees and induced those employees to leave the employment of CIMCO, effective September 5, 2025, and join American Refrigeration: Patrick Halliman Jr., Joshua D. Bailes, Trenton A. Black, Daniel Carlson, Dylan Farris, Benjamin Garcia, Mikhail Levchenko, Cory McCrary, Hunter McGannon, Jose Medina Herrera, Humberto Monsivais, Reagan Smith, and Armandina Vallejos (collectively, "Recruited Employees").

94.    Immediately after leaving the employment of CIMCO, the Individual Defendants and the Recruited Employees accepted positions with American Refrigeration.

95.    After their employment with CIMCO was ended, the Individual Defendants failed to return CIMCO's Confidential Information and Trade Secrets to CIMCO as required by their contracts with CIMCO.

96.    The Individual Defendants provided the Confidential Information and Trade Secrets to American Refrigeration in order to redirect CIMCO's clients, contacts, customers, and employees to do business with American Refrigeration instead of CIMCO.

23

97. American Refrigeration accepted and used the Confidential Information and Trade Secrets provided by the Individual Defendants to steal CIMCO's clients, contacts, customers, and employees.

98. Almost immediately after joining American Refrigeration, the Individual Defendants (acting on behalf of American Refrigeration) began contacting CIMCO's customers and encouraging them to move their refrigeration service business from CIMCO to American Refrigeration.

99. In doing so, the Individual Defendants relied on their knowledge of CIMCO's customer relationships, the customers' refrigeration systems, service needs, pricing arrangements, and contract timelines as well as other information obtained during their employment with CIMCO, including CIMCO's Confidential Information and Trade Secrets.

100. Using the knowledge and information they obtained during their employment with CIMCO, the Individual Defendants (acting on behalf of American Refrigeration) solicited CIMCO's customers to move their refrigeration service and maintenance business from CIMCO to American Refrigeration.

101. Several customers who previously did business with CIMCO moved their business to American Refrigeration following these solicitations, including (without limitation): Circle K Stores, Inc.; Holsum Bakery of Tolleson, LLC; McLane Food Service – Commerce City; Red Bird Farms Distribution Co.; Safeway – Albertsons Beverage; Inc.; Safeway – Albertsons Milk; Seattle Fish Co.; Southwest Banking Company, LLC; Stillman Wholesale Meat Co. Inc.; Sun Orchard; and The Ziegenfelder Company.

102. Many of the customers solicited were customers the Individual Defendants had serviced or interacted with while employed by CIMCO.

24

**X.    Defendants' solicitation of CIMCO's employees.**

103.    In addition to soliciting CIMCO's customers, Defendants also sought to recruit CIMCO's employees to leave their employment and join American Refrigeration.

104.    CIMCO's technicians and service personnel possess specialized knowledge and training in refrigeration systems and are critical to CIMCO's ability to provide services to its customers.

105.    By soliciting CIMCO's employees, Defendants sought to further disrupt CIMCO's operations while strengthening American Refrigeration's workforce.

106.    As a result of these solicitations, the Recruited Employees terminated their employment with CIMCO and joined American Refrigeration.

107.    Defendants knew that many of the Recruited Employees had enforceable contracts with CIMCO, all of which contained enforceable confidentiality and non-solicitation agreements.

108.    The Recruited Employees were uniquely essential to the management, organization, and service of CIMCO's business.

109.    Patrick Halliman Jr. ("Halliman") began working for CIMCO on August 14, 2017.

110.    On August 27, 2025, Halliman resigned from his employment with CIMCO, effective September 5, 2025.

111.    At the time of his resignation, Halliman was a Regional Service Manager for CIMCO. In that role, Halliman had 12 direct reports: Joshua D. Bailes, Trenton A. Black, Daniel Carlson, Dylan Farris, Benjamin Garcia, Mikhail Levchenko, Cory McCrary, Hunter McGannon, Jose Medina Herrera, Humberto Monsivais, Reagan Smith, and Armandina Vallejos (collectively, "Direct Reports").

112.    As a Regional Service Manager, Halliman was uniquely essential to the management, organization, and service of CIMCO's business because he manages the technicians

who perform the work that CIMCO sells. Halliman's role was indispensable and critical to the core operations of CIMCO's business. As a result of Halliman's resignation, CIMCO suffered an immediate loss of business, which confirms that his role was uniquely essential to the management, organization, and service of CIMCO's business.

113.    A few hours before Halliman resigned from his employment with CIMCO on August 27, 2025, all his Direct Reports each resigned from their employment with CIMCO. The Direct Reports sent their resignation notices to Halliman. Halliman attached each of the Direct Reports' resignation notices to his August 27, 2025 resignation email.

114.    The Direct Reports were uniquely essential to the service of CIMCO's business because they are technicians who physically perform the work that CIMCO sells. The Direct Reports roles were indispensable and critical to the core operations of CIMCO's business. As a result of the Direct Reports' resignations, CIMCO suffered an immediate loss of business, which confirms that the Direct Reports' roles were uniquely essential to the service of CIMCO's business.

115.    Since joining American Refrigeration, the Individual Defendants continue to actively solicit, recruit, and attempt to recruit and hire current employees of CIMCO and induce such employees to leave the employment of CIMCO and join American Refrigeration.

## XI.    American Refrigeration's knowledge and participation.

116.    American Refrigeration knowingly employed the Individual Defendants despite their contractual obligations to CIMCO.

117.    Upon information and belief, American Refrigeration knowingly benefited from and encouraged the Individual Defendants' misconduct, including their use of CIMCO's Confidential Information and Trade Secrets as well as their solicitation of CIMCO's customers and employees.

26

118. American Refrigeration knew that the Individual Defendants were subject to enforceable contractual obligations and fiduciary duties to CIMCO yet nevertheless assisted and participated in their wrongful conduct.

119. Upon information and belief, American Refrigeration encouraged or permitted the Individual Defendants to use their knowledge of CIMCO's customers and business operations to solicit business for American Refrigeration.

120. On October 22, 2025, counsel for CIMCO sent the Individual Defendants letters entitled Notice of Breach of Contract and Demand to Cease and Desist. In each of these letters, CIMCO requested a response indicating that the Individual Defendants had (a) ceased contact with all current and former customers of CIMCO for purposes of diverting sales or business opportunities, (b) terminated all business or customer relationships established by the Individual Defendants or their employer, American Refrigeration, due to the Individual Defendants' breach of contract, and (c) verified that they are not in possession of any materials consisting of CIMCO's confidential information as that term is defined in the Individual Defendants' contracts with CIMCO.

121. On October 30, 2025, an attorney representing American Refrigeration wrote counsel for CIMCO in response to CIMCO's October 22 letters to Sciascia and Sullivan. In two separate letters, counsel for American Refrigeration stated that American Refrigeration was "in receipt" of CIMCO's "letter[s] dated October 22, 2025," which were "directed to American Refrigeration's employee[s]," Sciascia and Sullivan. American Refrigeration further acknowledged the "non-solicitation clause" in Sciascia's contract with CIMCO and Sullivan's contract with CIMCO.

122. Thus, American Refrigeration knew that the Individual Defendants were subject to

confidentiality and non-solicitation obligations and that their actions would interfere with CIMCO's contractual and business relationships.

123. Nevertheless, American Refrigeration knowingly accepted the benefits of the Individual Defendants' misconduct, including the diversion of CIMCO's customers and employees as well as the use of CIMCO's Confidential Information and Trade Secrets.

## XII. Resulting harm to CIMCO.

124. As a direct and proximate result of Defendants' wrongful conduct, CIMCO has lost customers, service contracts, and business opportunities.

125. CIMCO has also experienced disruption to its workforce and the loss of valuable employees who are uniquely essential to the management, organization, and service of the business.

126. The Individual Defendants, acting on behalf of and in concert with American Refrigeration, continue to actively and aggressively recruit CIMCO's customers and employees.

127. Loss of customers and employees has caused, and will continue to cause, CIMCO significant harm if Defendants' conduct is not enjoined.

128. Defendants' conduct has caused CIMCO to suffer substantial harm and damages, including lost revenue, lost profits, loss of goodwill, loss of likely business expectancies, as well as the misuse and misappropriation of CIMCO's Confidential Information and Trade Secrets.

129. As a direct and proximate result of Defendants' wrongful conduct, CIMCO has suffered damages and irreparable harm—including damage to CIMCO's goodwill and likely business expectancies—which will continue and cause CIMCO to suffer additional harm and damage if Defendants' conduct is not enjoined.

130. Damages are ongoing and continue unabated, necessitating injunctive relief.

131.    The damages sustained by CIMCO as a direct and proximate result of Defendants' conduct are of a kind and degree that cannot be completely compensated by monetary damages, leaving CIMCO with no adequate remedy at law.

132.    Without injunctive relief, irreparable harm is imminent and the threatened injury to CIMCO is ongoing and will continue into the immediate future.

133.    Unless restrained by this Court, Defendants will continue to solicit CIMCO's customers and employees, continue to wrongfully interfere with CIMCO's protected business relationships and contracts, and continue using CIMCO's Confidential Information and Trade Secrets to compete unfairly against CIMCO.

134.    Immediate, substantial, and irreparable harm will result to CIMCO unless the Court restrains and enjoins the Defendants' wrongful conduct. Under these circumstances, CIMCO has no adequate legal remedy, and injunctive relief is the only way to protect CIMCO's interests fairly and adequately.

135.    The threatened injury to CIMCO far outweighs any potential harm an injunction may cause Defendants, so the balance of equities strongly favors granting injunctive relief to prevent irreparable harm to CIMCO.

136.    The public interest will only be served by granting injunctive relief in this case to prevent further breaches, egregious tortious conduct, and unfair competition by Defendants. Without injunctive relief, Defendants will continue to harm the ongoing business and goodwill of CIMCO.

137.    CIMCO has a substantial likelihood of success on the merits of its claims, given the facts alleged herein.

138.    All conditions precedent to CIMCO bringing this action and its request for relief

29

have been performed or have occurred.

## COUNT ONE: BREACH OF CONTRACT
## (AGAINST INDIVIDUAL DEFENDANTS)

139. CIMCO repeats and realleges paragraphs 1 through 138 as if fully set forth herein.

140. CIMCO's contracts with the Individual Defendants—McGannon's Service Sales Agreement, Roth's Product Support Agreement, Sciascia's Account Manager Agreement, Sciascia's Sales Manager Agreement, and Sullivan's Field Service Technician Agreement—are valid and enforceable contracts, including the confidentiality and non-solicitation provisions contained therein.

141. CIMCO has fully performed all its obligations under McGannon's Service Sales Agreement, Roth's Product Support Agreement, Sciascia's Account Manager Agreement, Sciascia's Sales Manager Agreement, and Sullivan's Field Service Technician Agreement.

142. CIMCO has protected business relationships and contracts with its clients, contacts, and customers, as well as in the goodwill associated therewith, and has an expectancy in the continuance of these business relationships, contracts, and associated goodwill.

143. The confidentiality and non-solicitation provisions in the Individual Defendants' contracts are reasonable and no greater than necessary under the circumstances to protect CIMCO's legitimate business interests, including CIMCO's Confidential Information and Trade Secrets that the Individual Defendants received and had access to during their employment as well as CIMCO's legitimate business interests and substantial relationships with prospective and existing customers, employees, and associated goodwill.

144. The Individual Defendants materially breached their contracts with CIMCO by:

    a. soliciting, recruiting, and attempting to recruit or hire CIMCO's employees who were uniquely essential to the management, organization, and service of

CIMCO's business;

b. inducing CIMCO's employees (who were uniquely essential to the management, organization, and service of CIMCO's business) to leave the employment of CIMCO;

c. soliciting the trade and patronage of CIMCO's clients, contacts, and customers;

d. soliciting, approaching, servicing, and dealing with CIMCO's clients, contacts and customers, in an attempt to convince them to terminate their business relationship with CIMCO;

e. disclosing information relating to the products and business of CIMCO to American Refrigeration and other unauthorized third parties without the prior written consent of CIMCO;

f. providing CIMCO's Confidential Information and Trade Secrets to American Refrigeration;

g. failing to return CIMCO's Confidential Information and Trade Secrets to CIMCO upon the termination of employment with CIMCO; and

h. using CIMCO's Confidential Information and Trade Secrets to their own advantage and to the business advantage of American Refrigeration.

145. The Individual Defendants' actions since their separation from CIMCO— prospecting, soliciting, and attempting to solicit CIMCO's customers and employees—are in violation of the Individual Defendants' contracts with CIMCO and are in breach of the same. Such actions have occasioned loss and damage to CIMCO and will continue to do so unless restrained and enjoined.

146. The Individual Defendants' breaches have caused, and will continue to cause,

31

damage and irreparable harm to CIMCO.

147. The damages sustained by CIMCO as a direct and proximate result of the Individual Defendants' conduct are of a kind and degree that cannot be completely compensated by monetary damages, leaving CIMCO with no adequate remedy at law.

148. As a direct and proximate result of the Individual Defendants' breaches of their contracts with CIMCO and misuse of Confidential Information and Trade Secrets gleaned from their work for CIMCO, CIMCO has suffered injury and damages in an amount to be proven at trial—including, but not limited to—actual damages (including, without limitation, but not limited to benefit of the bargain and out-of-pocket costs), consequential damages (lost profits), as well as interest thereon, plus court costs and expenses.

149. As a direct and proximate result of the Individual Defendants' breaches of their contracts with CIMCO and misuse of Confidential Information and Trade Secrets gleaned from their work for CIMCO, CIMCO has suffered irreparable harm (including, but not limited to, damage to its goodwill and likely business expectancies) and will continue to suffer additional harm if the Individual Defendants are not enjoined from further violation of their contracts with CIMCO.

150. Without injunctive relief, irreparable harm is imminent and the threatened injury to CIMCO is ongoing and will continue into the immediate future.

151. CIMCO does not seek to deny the Individual Defendants gainful employment or to restrict their ability to earn a livelihood, but the Individual Defendants must be enjoined from wrongfully harming CIMCO by keeping possession of CIMCO's Confidential Information and Trade Secrets as well as by soliciting CIMCO's customers and employees.

152. CIMCO will prevail on the merits of its claims (a) because its contracts with each

of the Individual Defendants, including the restrictive covenants and confidentiality provisions contained therein, are valid and enforceable and (b) because each of the Individual Defendants breached their contracts. The post-employment activity restrictive covenants and other provisions contained in the Individual Defendants' contracts are reasonable in scope and duration and are reasonably necessary to protect legitimate business interests, including protecting CIMCO's substantial relationships with prospective and existing customers, employees, associated goodwill, as well as CIMCO's Confidential Information and Trade Secrets. The Individual Defendants remain free to work so long as they do not engage in conduct that violates the terms of their contracts with CIMCO.

153.   The Individual Defendants will not be harmed by an injunction requiring them to comply with clear and unambiguous terms of contracts to which they voluntarily agreed. On balance, the potential harm that will result to CIMCO without injunctive relief is substantial. Thus, the balance of equities favors injunctive relief.

154.   Immediate, substantial, and irreparable harm will result to CIMCO unless the Court restrains and enjoins the Individual Defendants from violating the competitive post-employment restrictions in their contracts. Under these circumstances, CIMCO has no adequate legal remedy; enforcing the Individual Defendants' contracts through injunctive relief is the only way to protect CIMCO's interest fairly and adequately.

155.   The public interest will only be served by granting injunctive relief in this case to prevent further breaches, egregious tortious conduct, and unfair competition by the Individual Defendants. Without injunctive relief, the Individual Defendants will continue to harm the ongoing business and goodwill of CIMCO.

156.   Under these circumstances, injunctive relief is appropriate.

## COUNT TWO: BREACH OF FIDUCIARY DUTY
## (AGAINST INDIVIDUAL DEFENDANTS)

157.    CIMCO repeats and realleges paragraphs 1 through 138 as if fully set forth herein.

158.    As employees of CIMCO, the Individual Defendants owed fiduciary duties of loyalty and good faith to CIMCO; the Individual Defendants had a duty to act with due regard for the interest of CIMCO and to act in good faith, loyalty, and fair dealing toward CIMCO.

159.    By virtue of their fiduciary duties, the Individual Defendants cannot act in any manner adverse to CIMCO's interest and cannot subvert CIMCO's business by luring away customers and employees.

160.    The Individual Defendants breached their fiduciary duties to CIMCO by:

   a. soliciting, recruiting, and attempting to recruit or hire CIMCO's employees who were uniquely essential to the management, organization, and service of CIMCO's business;

   b. inducing CIMCO's employees (who were uniquely essential to the management, organization, and service of CIMCO's business) to leave the employment of CIMCO;

   c. soliciting the trade and patronage of CIMCO's clients, contacts, and customers;

   d. soliciting, approaching, servicing, and dealing with CIMCO's clients, contacts and customers, in an attempt to convince them to terminate their business relationship with CIMCO;

   e. disclosing information relating to the products and business of CIMCO to American Refrigeration and other unauthorized third parties without the prior written consent of CIMCO;

   f. providing CIMCO's Confidential Information and Trade Secrets to American

Refrigeration;

g. failing to return CIMCO's Confidential Information and Trade Secrets to CIMCO upon the termination of employment with CIMCO; and

h. using CIMCO's Confidential Information and Trade Secrets to their own advantage and to the business advantage of American Refrigeration.

161. As a direct and proximate result of Individual Defendants' breaches, CIMCO has suffered and will continue to suffer irreparable harm and damages.

### COUNT THREE: TORTIOUS INTERFERENCE
### (AGAINST AMERICAN REFRIGERATION)

162. CIMCO repeats and realleges paragraphs 1 through 138 as if fully set forth herein.

163. CIMCO's contracts with the Individual Defendants (McGannon's Service Sales Agreement, Roth's Product Support Agreement, Sciascia's Account Manager Agreement, Sciascia's Sales Manager Agreement, and Sullivan's Field Service Technician Agreement) are valid and enforceable contracts, including the confidentiality and non-solicitation provisions contained therein.

164. CIMCO's contracts with the Recruited Employees are valid and enforceable contracts, including the confidentiality and non-solicitation provisions contained therein.

165. The Recruited Employees were uniquely essential to the management, organization, and service of CIMCO's business.

166. CIMCO has protected business relationships and contracts with its clients, contacts, customers, and employees, as well as in the goodwill associated therewith, and has an expectancy in the continuance of these business relationships, contracts, and associated goodwill.

167. The confidentiality and non-solicitation provisions in the Individual Defendants' contracts and in the Recruited Employees' contracts are reasonable and no greater than necessary

under the circumstances to protect CIMCO's legitimate business interests, including CIMCO's Confidential Information and Trade Secrets that the Individual Defendants received and had access to during their employment as well as CIMCO's legitimate business interests and substantial relationships with prospective and existing customers, employees, and associated goodwill.

168.    The Individual Defendants were aware of CIMCO's business relationships and contracts with its clients, contacts, customers, and employees as evidenced by (among other things) the fact that the existence of the business relationships and contracts were expressly stated in the Individual Defendants' contracts with CIMCO.

169.    The knowledge of the Individual Defendants is attributed to American Refrigeration.

170.    American Refrigeration had knowledge of CIMCO's contracts with the Individual Defendants and the Recruited Employees.

171.    American Refrigeration had knowledge of CIMCO's business relationships and contracts with its clients, contacts, and customers.

172.    American Refrigeration is a stranger to CIMCO's contracts with the Individual Defendants and the Recruited Employees.

173.    American Refrigeration is a stranger to CIMCO's business relationships and contracts with its clients, contacts, and customers.

174.    American Refrigeration intentionally, wrongfully, and unjustifiably interfered with CIMCO's business relationships and contracts with its clients, contacts, customers, and employees.

175.    Despite knowing the Individual Defendants were bound by confidentiality and non-solicitation clauses standard to the industry, American Refrigeration intentionally, wrongfully, and unjustifiably interfered with CIMCO's contracts with the Individual Defendants by:

36

    a. encouraging, inducing, and aiding the Individual Defendants to breach the confidentiality and non-solicitation clauses in their contracts; and

    b. encouraging and assisting the Individual Defendants in directly or indirectly recruiting CIMCO's employees (including, without limitation, the Recruited Employees) to leave their employment with CIMCO and accept employment with American Refrigeration.

176. Despite knowing the Recruited Employees were bound by confidentiality and non-solicitation clauses standard to the industry, American Refrigeration intentionally, wrongfully, and unjustifiably interfered with CIMCO's contracts with the Recruited Employees by:

    a. encouraging, inducing, and aiding the Recruited Employees to breach the confidentiality and non-solicitation clauses in their contracts; and

    b. encouraging and assisting the Recruited Employees in directly or indirectly recruiting CIMCO's employees to leave their employment with CIMCO and accept employment with American Refrigeration.

177. American Refrigeration intentionally, wrongfully, and unjustifiably interfered with CIMCO's protected business relationships and contracts with its clients, contacts, and customers by:

    a. encouraging and assisting the Individual Defendants and/or the Recruited Employees in diverting CIMCO's clients, contacts, and customers to American Refrigeration, despite knowing the Individual Defendants were bound by non-solicitation clauses standard in the industry; and

    b. soliciting and accepting business from CIMCO's clients, contacts, and customers, despite knowing that such business was obtained through stolen

CIMCO property (including its Confidential Information and Trade Secrets) and in breach of the Individual Defendants' contracts with CIMCO and/or the Recruited Employees' contracts with CIMCO.

178. The Individual Defendants, while acting in the line and scope of their employment with American Refrigeration, employed wrongful means (including but not limited to false or misleading statements and the misuse of CIMCO's Confidential Information and Trade Secrets) to cause CIMCO's clients, contacts, and customers to (a) terminate their business relationships and/or contracts with CIMCO and (b) refrain from entering a business relationship and/or contract with CIMCO.

179. American Refrigeration has, through its agents and employees acting in the line and scope of their agency or employment with American Refrigeration, solicited CIMCO's clients, contacts, and customers using CIMCO's Confidential Information and Trade Secrets obtained by the Individual Defendants during their employment with CIMCO—all while knowing of their contracts with CIMCO and the enforceable confidentiality and non-solicitation agreements contained therein.

180. American Refrigeration thus employed wrongful means to cause CIMCO's customers to terminate their business relationships and/or contracts with CIMCO.

181. At all relevant times, the Individual Defendants acted individually and in concert with one another and with American Refrigeration.

182. At all relevant times, American Refrigeration had control over the Individual Defendants and their actions furthered a business purpose of American Refrigeration.

183. American Refrigeration is vicariously liable for the conduct of its agents and employees acting in the line and scope of their agency or employment with American

Refrigeration—including the Individual Defendants—under the doctrine of respondeat superior.

184.    American Refrigeration's conduct constitutes tortious interference with CIMCO's protectable business relationships and contracts.

185.    The business relationships and contracts interfered with include, without limitation, CIMCO's business relationships and contracts with the Individual Defendants, the Recruited Employees, Circle K Stores, Inc.; Holsum Bakery of Tolleson, LLC; McLane Food Service – Commerce City; Red Bird Farms Distribution Co.; Safeway – Albertsons Beverage; Inc.; Safeway – Albertsons Milk; Seattle Fish Co.; Southwest Banking Company, LLC; Stillman Wholesale Meat Co. Inc.; Sun Orchard; and The Ziegenfelder Company.

186.    As a direct and proximate result of American Refrigeration's tortious interference, CIMCO has suffered and will continue to suffer irreparable harm and damages.

### COUNT FOUR: TORTIOUS INTERFERENCE
### (AGAINST INDIVIDUAL DEFENDANTS)

187.    CIMCO repeats and realleges paragraphs 1 through 138 as if fully set forth herein.

188.    CIMCO's contracts with the Individual Defendants (McGannon's Service Sales Agreement, Roth's Product Support Agreement, Sciascia's Account Manager Agreement, Sciascia's Sales Manager Agreement, and Sullivan's Field Service Technician Agreement) are valid and enforceable contracts, including the confidentiality and non-solicitation provisions contained therein.

189.    CIMCO's contracts with the Recruited Employees are valid and enforceable contracts, including the confidentiality and non-solicitation provisions contained therein.

190.    The Recruited Employees were uniquely essential to the management, organization, and service of CIMCO's business.

191.    CIMCO has protected business relationships and contracts with its clients, contacts,

39

customers, and employees, as well as in the goodwill associated therewith, and has an expectancy in the continuance of these business relationships, contracts, and associated goodwill.

192.    The confidentiality and non-solicitation provisions in the Individual Defendants' contracts and in the Recruited Employees' contracts are reasonable and no greater than necessary under the circumstances to protect CIMCO's legitimate business interests, including CIMCO's Confidential Information and Trade Secrets that the Individual Defendants received and had access to during their employment as well as CIMCO's legitimate business interests and substantial relationships with prospective and existing customers, employees, and associated goodwill.

193.    The Individual Defendants were aware of CIMCO's business relationships and contracts with its clients, contacts, customers, and employees as evidenced by (among other things) the fact that the existence of the business relationships and contracts were expressly stated in the Individual Defendants' contracts with CIMCO.

194.    The Individual Defendants are strangers to CIMCO's contracts with the Recruited Employees.

195.    The Individual Defendants are strangers to CIMCO's business relationships and contracts with its clients, contacts, and customers.

196.    The Individual Defendants intentionally, wrongfully, and unjustifiably interfered with CIMCO's business relationships and contracts with its clients, contacts, customers, and employees.

197.    Despite knowing the Recruited Employees were bound by confidentiality and non-solicitation clauses standard to the industry, the Individual Defendants intentionally, wrongfully, and unjustifiably interfered with CIMCO's contracts with the Recruited Employees by:

      a.   encouraging, inducing, and aiding the Recruited Employees to breach the

40

confidentiality and non-solicitation clauses in their contracts; and

b.  encouraging and assisting the Recruited Employees in directly or indirectly recruiting CIMCO's employees to leave their employment with CIMCO and accept employment with American Refrigeration.

198.    The Individual Defendants employed wrongful means (including but not limited to false or misleading statements and the misuse of CIMCO's Confidential Information and Trade Secrets) to cause CIMCO's clients, contacts, and customers to (a) terminate their business relationships and/or contracts with CIMCO and (b) refrain from entering a business relationship and/or contract with CIMCO.

199.    The Individual Defendants intentionally, wrongfully, and unjustifiably interfered with CIMCO's protected business relationships and contracts with its clients, contacts, and customers by:

a.  diverting CIMCO's clients, contacts, and customers to American Refrigeration; and

b.  soliciting and accepting business from CIMCO's clients, contacts, and customers on behalf of American Refrigeration.

200.    The Individual Defendants' conduct constitutes tortious interference with CIMCO's protectable business relationships and contracts.

201.    The business relationships and contracts interfered with include, without limitation, CIMCO's business relationships and contracts with the Recruited Employees, Circle K Stores, Inc.; Holsum Bakery of Tolleson, LLC; McLane Food Service – Commerce City; Red Bird Farms Distribution Co.; Safeway – Albertsons Beverage; Inc.; Safeway – Albertsons Milk; Seattle Fish Co.; Southwest Banking Company, LLC; Stillman Wholesale Meat Co. Inc.; Sun Orchard; and

41

The Ziegenfelder Company.

202.    As a direct and proximate result of the Individual Defendants' tortious interference, CIMCO suffered and will continue to suffer irreparable harm and damages.

## COUNT FIVE: FEDERAL MISAPPROPRIATION OF TRADE SECRETS
### (AGAINST ALL DEFENDANTS)

203.    CIMCO repeats and realleges paragraphs 1 through 138 as if fully set forth herein.

204.    CIMCO's Confidential Information and Trade Secrets are used in a trade or business, not publicly or generally known, cannot be readily ascertained or derived from publicly available information, and have significant economic value.

205.    CIMCO's Confidential Information and Trade Secrets are unique to CIMCO and derive independent economic value from not being commonly known or available to the public.

206.    CIMCO takes sufficient and reasonable measures (including, but not limited to, use of passwords, restriction of access, and confidentiality policies) to maintain the secrecy of its Confidential Information and Trade Secrets as well as to protect the Confidential Information and Trade Secrets from disclosure to anyone other than authorized personnel.

207.    The Individual Defendants, by virtue of their roles with CIMCO, had access to CIMCO's Confidential Information and Trade Secrets.

208.    The Individual Defendants misappropriated CIMCO's Confidential Information and Trade Secrets by providing the Confidential Information and Trade Secrets to American Refrigeration in order to redirect CIMCO's clients, contacts, customers, and employees to do business with American Refrigeration instead of CIMCO.

209.    At all relevant times, the Individual Defendants acted individually and in concert with one another and with American Refrigeration.

210.    American Refrigeration misappropriated CIMCO's Confidential Information and

42

Trade Secrets by accepting and using the Confidential Information and Trade Secrets provided by the Individual Defendants in order to steal CIMCO's clients, contacts, customers, and employees, despite knowing the Confidential Information and Trade Secrets were confidential property of CIMCO.

211. At all material times, Defendants acted willfully, maliciously, and in bad faith.

212. Defendants' misappropriation of CIMCO's Confidential Information and Trade Secrets gave, and continues to give, Defendants an unfair and unjust competitive advantage for themselves and others, to the detriment of CIMCO.

213. Defendants' misappropriation has caused, and will continue to cause, damages and irreparable harm to CIMCO.

214. Defendants' use and disclosure, as well as Defendants' threatened use and disclosure, of CIMCO's Confidential Information and Trade Secrets entitles CIMCO to injunctive relief and damages under 18 U.S.C. § 1836(b)(3).

215. As a direct and proximate result of Defendants' misappropriation of CIMCO's Confidential Information and Trade Secrets, CIMCO has suffered damages and irreparable harm (including, but not limited to, damage to its goodwill and likely business expectancies) and will continue to suffer additional harm and damages if Defendants' conduct is not enjoined.

### COUNT SIX: ALABAMA TRADE SECRETS ACT
### (AGAINST ALL DEFENDANTS)

216. Plaintiff repeats and realleges paragraphs 1 through 138 as if fully set forth herein.

217. CIMCO derives independent economic value from its Confidential Information and Trade Secrets, which it lawfully owns.

218. CIMCO takes sufficient and reasonable measures (including, but not limited to, use of passwords, restriction of access, and confidentiality policies) to maintain the secrecy of its

Confidential Information and Trade Secrets as well as to protect the Confidential Information and Trade Secrets from disclosure to anyone other than authorized personnel.

219.    CIMCO's Confidential Information and Trade Secrets is not publicly available, nor may such information be compiled or created by CIMCO's competitors without significant investment of time and money.

220.    The Confidential Information and Trade Secrets provide CIMCO with a competitive advantage.

221.    A competitor's use of CIMCO's Confidential Information and Trade Secrets would provide the competitor—such as American Refrigeration—with an unfair economic advantage.

222.    Thus, maintaining the confidentiality and secrecy of its Confidential Information and Trade Secrets is essential for CIMCO to maintain its competitive advantage.

223.    CIMCO's Confidential Information and Trade Secrets constitutes trade secrets under Ala. Code § 8-27-2 as well as confidential and proprietary business information of CIMCO.

224.    The Individual Defendants, by the virtue of their roles with CIMCO, had access to CIMCO's Confidential Information and Trade Secrets that other personnel at CIMCO did not have access to or knowledge of and had a duty to maintain the secrecy thereof.

225.    The Individual Defendants misappropriated CIMCO's Confidential Information and Trade Secrets by providing the Confidential Information and Trade Secrets to American Refrigeration in order to redirect CIMCO's clients, contacts, customers, and employees to do business with American Refrigeration instead of CIMCO.

226.    At all relevant times, the Individual Defendants acted individually and in concert with one another and with American Refrigeration.

227.    American Refrigeration misappropriated CIMCO's Confidential Information and

44

Trade Secrets by accepting and using the Confidential Information and Trade Secrets provided by the Individual Defendants in order to steal CIMCO's clients, contacts, customers, and employees, despite knowing the Confidential Information and Trade Secrets were confidential property of CIMCO.

228. Defendants' conduct described herein was willful, malicious, and in bad faith.

229. Defendants' misappropriation of CIMCO's Confidential Information and Trade Secrets gave, and continues to give, Defendants an unfair and unjust competitive advantage for themselves and others, to the detriment of CIMCO.

230. Defendants' misappropriation has caused, and will continue to cause, damage and irreparable harm to CIMCO.

231. As a direct and proximate result of Defendants' misappropriation of CIMCO's Confidential Information and Trade Secrets, CIMCO has suffered damages and irreparable harm (including, but not limited to, damage to its goodwill and likely business expectancies) and will continue to suffer additional harm and damages if Defendants' conduct is not enjoined.

## COUNT SEVEN: AIDING AND ABETTING
### (AGAINST AMERICAN REFRIGERATION)

232. CIMCO repeats and realleges paragraphs 1 through 161 as if fully set forth herein.

233. American Refrigeration knowingly and substantially assisted the Individual Defendants in breaching the confidentiality and non-solicitation provisions in their agreements with CIMCO.

234. American Refrigeration knowingly and substantially assisted the Individual Defendants in breaching their fiduciary duties and other legal duties owed to CIMCO.

235. American Refrigeration was aware of its role as part of an overall improper scheme at the time that it provided assistance to the Individual Defendants.

236. As a direct and proximate result of American Refrigeration's aiding and abetting, CIMCO has suffered and will continue to suffer irreparable harm and damages.

## COUNT EIGHT: CIVIL CONSPIRACY
### (AGAINST ALL DEFENDANTS)

237. CIMCO repeats and realleges paragraphs 1 through 138 as if fully set forth herein.

238. At all relevant times, the Individual Defendants acted individually and in concert with one another and with American Refrigeration.

239. Defendants agreed to act in concert to misappropriate and use CIMCO's Confidential Information and Trade Secrets to provide an unfair competitive advantage to American Refrigeration and to misappropriate business from CIMCO.

240. Defendants conspired unlawfully to obtain, retain, and use confidential, proprietary information that Defendants knew, at the time of their actions, CIMCO had taken reasonable measures to maintain the secrecy of and limit the use of such information.

241. American Refrigeration and the Individual Defendants engaged in concerted action to carry out tortious acts against CIMCO by unlawfully diverting CIMCO's customers to American Refrigeration, interfering with CIMCO's contractual relations by soliciting and hiring CIMCO employees, and interfering with CIMCO's expectancy of continued business relationships with its customers.

242. By diverting CIMCO's customers from CIMCO to American Refrigeration, the Individual Defendants violated the confidentiality and non-solicitation clauses in their agreements with CIMCO.

243. By diverting CIMCO's customers from CIMCO to American Refrigeration, the Defendants tortiously interfered with CIMCO's existing and expected business relationships.

244. By soliciting and hiring CIMCO employees to work for American Refrigeration,

the Defendants violated the non-solicitation clause in their contracts with CIMCO and/or tortiously interfered with these contracts.

245. By diverting CIMCO's customers to American Refrigeration, Defendants interfered with CIMCO's protected business relationships and expectancies.

246. The foregoing scheme was unlawful and achieved by unlawful means.

247. As a direct and proximate result of Defendants' civil conspiracy, CIMCO has suffered and will continue to suffer irreparable harm and damages.

### PRAYER FOR RELIEF

248. Wherefore, CIMCO respectfully requests the following relief:

   a. Compensatory and punitive damages in an amount to be proven at trial.

   b. Injunctive relief prohibiting the Individual Defendants from further (i) violation of their contracts with CIMCO, (ii) tortious interference with CIMCO's business relationships and contracts, and (iii) misappropriation of CIMCO's Confidential Information and Trade Secrets.

   c. Injunctive relief prohibiting American Refrigeration from further (i) aiding and abetting the Individual Defendants' breaches of their contracts with CIMCO, (ii) tortious interference with CIMCO's business relationships and contracts, and (iii) misappropriation of CIMCO's Confidential Information and Trade Secrets.

   d. Payment of costs and expenses of this suit.

   e. Payment of CIMCO's reasonable and necessary attorney fees.

   f. Interest at the highest lawful rate on all amounts awarded.

   g. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

249.    CIMCO demands a trial by jury on all issues so triable.


Dated: March 31, 2026                     Respectfully submitted:

                                          */s/ John Hargrove*
                                          John Hargrove (ASB-6328-H51J)
                                          Carmen Weite (ASB-8084-F10I)
                                          BRADLEY ARANT BOULT CUMMINGS LLP
                                          One Federal Place | 1819 Fifth Avenue North
                                          Birmingham, Alabama 35203-2119
                                          Phone: (205) 521-8000
                                          Fax: (205) 521-8800
                                          jhargrove@bradley.com
                                          cweite@bradley.com
                                          *Attorneys for CIMCO Refrigeration Inc.*

48